IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| WALTER and MARTHA BUTLER | ) | 2006 JUN 29 P 3: 49 |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | CASE NUMBER ___ 1:06cv584-DRB |
| | ) | |
| MERCK & CO., INC. | ) | MDL NO. 1657 |
| | ) | |
| Defendant. | ) | |

**DEMAND FOR JURY TRIAL**

<u>In re: Vioxx Products Liability Litigation</u>

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **WALTER BUTLER** (hereinafter referred to as "Plaintiff Butler") **and MARTHA BUTLER** (collectively "Plaintiffs") complaining of MERCK & CO., INC. (hereinafter referred to as "Defendant Merck"), and for cause of action would respectfully show unto the Court and the Jury the following:

### I. INTRODUCTION AND PARTIES

1.    This is a civil action brought on behalf of Plaintiffs regarding damages that were a result of the ingestion of Vioxx® (Rofecoxib), which was manufactured, marketed, distributed and sold to Plaintiff Butler by Defendant Merck and/or Defendant Merck's representatives.

2.    Plaintiff WALTER BUTLER is an individual residing in Ozark, Alabama and is a citizen of the State of Alabama and resident of Dale County, Alabama.

3.    Defendant Merck is an American pharmaceutical company incorporated in the State of New Jersey, and has its principal place of business in Rahway, New Jersey. Defendant Merck has an office in Alabama and is duly authorized to conduct business in

1

the State of Alabama. Service of process upon Defendant Merck may be accomplished by serving the agent for service of process at The Corporation Company, 2000 Interstate Park Drive Ste 204, Montgomery, Al 36109. Defendant Merck does business by agent in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed Vioxx® (Rofecoxib) in Alabama.

4.    At all times relevant herein, Defendant Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals and other products, including Vioxx® (Rofecoxib), for use by the mainstream public and, more specifically, Plaintiff Butler.

## II. JURISDICTION

5.    Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this matter as the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,0000.00, excluding interest and costs.

## III. CONDITIONS PRECEDENT

6.    All conditions precedent have been performed or have occurred. FED. R. CIV. PROC. 9(c).

## IV. FACTUAL BACKGROUND

7.    Vioxx® (Rofecoxib) was one of the first of a new class of non-steroidal anti-inflammatory drugs (hereinafter "NSAIDs"), which are known as COX-2 inhibitors. This class of drugs was designed to reduce the risk of the serious gastrointestinal side effects associated with the older NSAIDs. Vioxx® (Rofecoxib) was originally approved for the treatment of osteoarthritis, acute pain in adults, and primary dysmenorrhea. In 2002, the FDA also approved Vioxx® (Rofecoxib) for the treatment of adult rheumatoid arthritis.

2

8.    Upon the approval of Vioxx® (Rofecoxib) by the FDA on May 21, 1999, Defendant Merck launched one of the most aggressive marketing campaigns known in the pharmaceutical industry to date. In fact, Vioxx® (Rofecoxib) was the most heavily marketed prescription drug in 2003 and that some 120 million prescriptions for Vioxx had been written by the time of its worldwide withdrawal from the market on September 30, 2004. Further, at all times during Defendant Merck's marketing campaign, Defendant Merck marketed Vioxx® (Rofecoxib) as a safe and effective drug. Defendant Merck did this in spite of the fact that various studies, including their own clinical trials and Merck-sponsored analyses, had shown concerns over the cardiovascular safety profile of Vioxx® (Rofecoxib), and Defendant Merck had received warning letters concerning the marketing of Vioxx® (Rofecoxib) from the FDA. By April of 2001, Merck had actual knowledge of the statistically significant adverse cardiovascular risks of Vioxx ingestion.

9.    Moreover, in April of 2002, Defendant Merck, itself, issued a "Dear Healthcare Professional" letter to all physicians, which warned them that chronic use (longer than six (6) months) of a daily dosage of 50 milligrams of Vioxx® (Rofecoxib) was not recommended. This letter resulted from Defendant Merck's own VIGOR study. The VIGOR study was published in 2000 and showed that there was a fivefold increase in cardiovascular thrombotic events for Vioxx® (Rofecoxib) when it was compared with naproxen, another pain reliever in that same class. The Healthcare Professionals were reinsured, however, by Defendant Merck's sales representatives that Vioxx® (Rofecoxib) was safe and effective, and Defendant Merck continued aggressively marketing the drug as safe and effective to the general public and that the reasons for the increased cardiovascular events were not related to Vioxx® ingestion.

3

10. The general public, however, was never warned of the serious side effects, such as heart attacks, strokes and/or sudden death that could occur, especially if you had previous cardiovascular problems, from the ingestion of Vioxx® (Rofecoxib) or were elderly. Had Plaintiff Butler, and the general public, been adequately warned of the potential life-threatening side effects, he could have chosen to request other prescription medications from his healthcare professional and, therefore, any exposure of the potential life-threatening side effects of Vioxx® (Rofecoxib) could have been avoided completely. In order to have the requisite information to make an informed decision whether to take Vioxx® (Rofecoxib), Plaintiff Butler, and the general public, should have been informed by Defendant Merck of the extremely dangerous and sometimes lethal effects of Vioxx® (Rofecoxib).

11. Plaintiff Butler took Vioxx® (Rofecoxib) 25 mg per day as recommended by his healthcare provider prior to suffering a heart attack on November 7, 2004. Plaintiff Butler is married to Martha Butler

## V. ALLEGATIONS

12. Defendant Merck negligently, recklessly and wantonly failed to warn Plaintiff Butler, and the general public, of the risks associated with taking Vioxx® (Rofecoxib). Defendant Merck failed to do so even _after_ various studies, including their own, had shown that there were problems concerning the cardiovascular safety profile of Vioxx® (Rofecoxib) and, in particular, that those problems were significant in the elderly as compared to placebo and/or other selective or nonselective NSAIDs.

13. Defendant Merck endeavored to deceive Plaintiff Butler, and the general public, by not disclosing its knowledge of the various studies, including its own, that had

4

shown there were problems concerning the cardiovascular safety profile of Vioxx®
(Rofecoxib).

14.    Further, Defendant Merck did not provide sufficient warnings and
instructions that would have put Plaintiff Butler, and the general public, on notice of the
dangers and adverse effects caused by ingesting Vioxx® (Rofecoxib).

15.    Defendants designed, manufactured, distributed, sold and/or supplied into
the stream of commerce Vioxx® (Rofecoxib) in a defective and unreasonably dangerous
condition, as designed, taking into consideration the utility of the drug and the risk to
Plaintiff Butler, and the general public.

16.    Vioxx® (Rofecoxib) as designed, manufactured, distributed, sold and/or
supplied by Defendant Merck was defective as marketed due to inadequate warnings,
instructions and/or labeling.

17.    Vioxx® (Rofecoxib) as designed, manufactured, distributed, sold and/or
supplied by Defendant Merck was defective due to inadequate testing before and after
Defendants Merck's knowledge of the various studies, including their own, evidencing
the rightful concerns over the cardiovascular safety profile of Vioxx® (Rofecoxib).

## VI. STRICT PRODUCTS LIABILITY

18.    Plaintiffs incorporate by reference all other paragraphs of this Complaint
as fully set forth herein and further allege:

19.    Vioxx® (Rofecoxib), as designed, manufactured, sold and/or supplied  by
Defendant Merck, was placed into the stream of commerce by Defendant Merck in a
defective and unreasonably dangerous condition taking into consideration the utility of
the product and the risks involved with the drug's use.

20.    Further, Vioxx® (Rofecoxib), as designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in marketing due to inadequate warnings, instructions, and/or labeling.

21.    Vioxx® (Rofecoxib), as designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

A.    **DESIGN AND MARKETING DEFECT.**

22.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

23.    Vioxx® (Rofecoxib) was defective in design and/or formulation in that, when it left the hands of Defendant Merck and/or its representatives, the foreseeable risks of serious harm posed by this drug was sufficiently great in relation to its alleged benefits. The foreseeable risks of serious harm were so much so that Plaintiff Butler, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Vioxx® (Rofecoxib)

24.    Vioxx® (Rofecoxib) was also defective due to, not only inadequate warnings and misrepresentations to the general public, but, also, inadequate warnings and misrepresentations to healthcare professionals.    Defendant Merck knew that had healthcare professionals been adequately warned of the serious risks of injury to their patients, healthcare professionals would not have prescribed Vioxx® (Rofecoxib) to said patients.

25.    Vioxx® (Rofecoxib) was defective due to inadequate testing both before Defendant Merck became aware of the risks of ingesting the drug and after Defendant Merck became aware of the risks of ingesting the drug.

6

26. As the producing and direct cause and legal result of: 1) the design defect of the Vioxx® (Rofecoxib) drug; 2) the marketing defect of the Vioxx® (Rofecoxib) drug due to the Defendant Merck's failure to adequately warn consumers; and 3) the defective condition of the Vioxx® (Rofecoxib) drug as manufactured and supplied by Defendant Merck and it's representatives, Plaintiff Butler, has suffered injuries and monetary damages.

**B.    INADEQUATE AND IMPROPER WARNINGS.**

27. Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

28. Defendant Merck was the manufacturer, developer and/or supplier of Vioxx® (Rofecoxib). Vioxx® (Rofecoxib) drug, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings regarding the risk of developing serious coronary heart disease after ingesting the drug. Further, Defendant Merck failed to warn of these serious risks after Defendant Merck had knowledge of same. The information provided to consumers did not reflect Defendant Merck's knowledge that Vioxx® (Rofecoxib) was not safe and effective as indicated in its aggressive marketing campaign. Nor were consumers made aware that ingesting the drug could result in serious injury, pain and discomfort and/or death. Full and proper warnings that accurately and fully reflected the risks of serious injury and/or sudden death due to the ingestion of Defendant Merck's Vioxx® (Rofecoxib) should have been disclosed with respect this drug.

29. As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Vioxx® (Rofecoxib), as manufactured and/or

7

supplied by Defendant Merck and it's representatives, Plaintiffs has suffered injuries and monetary damages.

## VII. FRAUD

30.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

31.    Defendant Merck fraudulently represented to the general public, as well as healthcare professionals, that Vioxx® (Rofecoxib) was a safe and effective drug. Defendant Merck made this representation while knowing that, if healthcare professionals and consumers knew of the serious risks associated with the ingestion of the Vioxx® (Rofecoxib) drug, they would not prescribe and/or ingest this drug. Defendant Merck knew its representations to be false, and Plaintiff Butler, relied on Defendant Merck's false representations in his ingestion of Vioxx® (Rofecoxib). These fraudulent representations by Defendant Merck were a proximate cause of the injuries to and monetary losses of Plaintiffs.

## VIII. NEGLIGENCE

32.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

33.    Defendant Merck and its representatives were merchants or sellers of Vioxx® (Rofecoxib). Defendant Merck had a duty to exercise reasonable care in the design, manufacturing, marketing, sale, testing and/or distribution of this drug into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturing, marketing, sale, testing, and/or distribution of the Vioxx® (Rofecoxib) drug into interstate commerce. Defendant Merck knew, or should have known, that its

Vioxx® (Rofecoxib) drug greatly increased Plaintiff Butler's risks of having a heart attack and/or stroke, or causing sudden cardiac death.

34.    Despite the fact that Defendant Merck knew, or should have known that Vioxx® (Rofecoxib) could cause the injuries and/or risk of death to Plaintiff Butler, this Defendant continued to market, distribute, and sell Vioxx® (Rofecoxib) to the public.

35.    Defendant Merck knew, or should have known that consumers, such as Plaintiff Butler, would foreseeably suffer such injuries and/or risk of death as a result of Defendant Merck's failure to exercise ordinary care as described above. Moreover, after Defendant Merck became aware of the serious risks of ingesting Vioxx® (Rofecoxib), it owed a legal duty to Plaintiffs, and the general public, to disclose that knowledge. Defendant Merck's breach of duty to disclose this information was a proximate cause of the injuries to Plaintiffs.

## IX. NEGLIGENT MISREPRESENTATIONS

36.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

37.    Defendant Merck represented and marketed the Vioxx® (Rofecoxib) drug as being safe and effective. After Defendant Merck became aware of the risk of ingesting Vioxx® (Rofecoxib), however, Defendant Merck failed to communicate to Plaintiffs and/or the general public, that the ingestion of this drug could cause a person to have a heart attack and/or stroke, or that Vioxx® (Rofecoxib) could cause serious coronary heart disease and/or the risk of death to the person ingesting the drug.

38.    Therefore, Plaintiffs bring this cause of action against Defendant Merck under the theory of negligent misrepresentation for the following reasons:

a)  Plaintiffs incorporate all facts and allegations previously stated in this Complaint;

b)  Defendant Merck failed to warn Plaintiffs, and other consumers, of the defective condition of the Vioxx® (Rofecoxib), as manufactured and/or supplied by the Defendant Merck;

c)  Defendant Merck, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Vioxx® (Rofecoxib) in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant Merck made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

d)  The above misrepresentations were made to Plaintiffs, as well as the general public;

e)  Plaintiff Butler, and his healthcare providers justifiably relied on Defendant Merck's misrepresentations; and

f)  Consequently, Plaintiff Butler's ingestion of Vioxx® (Rofecoxib) was to his detriment. Defendant Merck's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

## X. EXPRESSED WARRANTY FOR GOODS

39.  Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege:

40.  Defendant Merck breached its express warranty of goods. Defendant Merck was a merchant and/or seller of Vioxx® (Rofecoxib). Defendant Merck sold this drug to consumers for the ordinary purpose for which such drugs are used by consumers. Defendant Merck owed a legal duty to Plaintiff Butler, and the public in general, to disclose its knowledge of the serious risks of ingesting Vioxx® (Rofecoxib) as marketed. This breach of duty by Defendant Merck was a proximate cause of the injuries and monetary loss to Plaintiffs.

## XI. IMPLIED WARRANTY

### A.    WARRANTY OF MERCHANTABILITY.

41.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein and further allege;

42.    Defendant Merck breached its implied warrant of merchantability. Defendant Merck was a merchant and/or seller of Vioxx® (Rofecoxib). Defendant Merck sold this drug to Plaintiff Butler, and other consumers, for the ordinary purpose for which such drug is used by consumers.    Vioxx® (Rofecoxib) was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such drugs are used. A defect or defects in the use of this drug for its ordinary purposes caused injuries and monetary losses to Plaintiffs.

### B.    WARRANTY OF FITNESS.

43.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully set forth herein, and further allege:

44.    Defendant Merck breached its implied warranty of fitness. Defendant Merck sold Vioxx® (Rofecoxib), and, at the time of the sale of this drug, Defendant Merck knew or had reason to know of a particular purpose for which the drug was to be used. At the time of the sale of the drug to Plaintiff Butler, Defendant Merck knew, or had reason to know, that Plaintiff Butler was relying on the skill and judgment of Defendant Merck to select or furnish a suitable product for the intended purpose. At the time of sale of the drug to Plaintiff Butler, Defendant Merck exercised its skill and judgment in the selection of this drug as safe and effective, and Plaintiff Butler relied thereon. Vioxx® (Rofecoxib) was not reasonably fit and/or suitable for the use for which it was selected. Failure of Defendant Merck to select and sell a product which was

11

reasonably safe for its intended use proximately caused the injuries and monetary losses to Plaintiffs.

## XII. LOSS OF CONSORTIUM

45.    Plaintiffs incorporate by reference herein the foregoing paragraphs in this Complaint as though fully set forth herein.

46.    Plaintiff MARTHA BUTLER incurred emotional and intangible loss from her marriage, including loss of affection, solace, comfort, companionship, society, assistance, and sexual relations.

47.    Plaintiffs' loss of consortium was caused by Defendant Merck's negligent, reckless and wanton failure to warn Plaintiff Butler and the general public, of the risks associated with taking Vioxx® (Rofecoxib).

## XIII. DAMAGES

48.    Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain serious injuries and damages as a proximate result of Defendant Merck's conduct. Plaintiffs will respectfully request the Court and Jury to determine the amount of the loss Plaintiffs has incurred in the past and will incur in the future, not only from a financial standpoint, but also in terms of good health and freedom from pain and worry.

## XIV. PUNITIVE DAMAGES

49.    At all times relevant hereto, Defendant Merck actually knew of the defective nature of Vioxx® (Rofecoxib) as set forth herein and continued to design, manufacture, market, distribute and sell Vioxx® (Rofecoxib) so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by Vioxx® (Rofecoxib) Defendant Merck's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud,

ill will, recklessness, and/or willful and intentional disregard for the safety and rights of Plaintiffs, as well as the general public and/or consumers of Vioxx® (Rofecoxib). Plaintiffs, therefore, are entitled to punitive damages for such gross negligence.

## XV. JURY DEMAND

50.    Plaintiffs hereby request a trial by jury on all issues in this case.

## XVI. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon trial hereof, the Court grant:

1.    Judgment against Defendant Merck for actual damages, as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;

2.    Interest on said Judgment, at the legal rate from the date of the Judgment;

3.    Plaintiffs' medical expenses; physical impairment, pain and suffering; mental anguish and costs of this suit;

4.    Plaintiffs' lost wages;

5.    Plaintiffs' loss of consortium, society, and support;

6.    Prejudgment interest as allowed by law;

7.    Any additional damages and punitive damages under the facts set forth in this or any amended pleading(s); and

8.    For such other and further relief to which Plaintiffs may show to be justly entitled, both in law and in equity.

Beasley, Allen, Crow, Methvin, Portis & Miles P.C.

By: _____

    Frank Woodson (WOODS0479)
    ASB-0479-N66E
    P. O. Box 4160
    Montgomery , AL 36103-4160
    Phone (334) 269-2343
    Fax (334) 954-7555

**GOFORTH LEWIS SANFORD LLP**

By: _____

    Shelly A. Sanford
    Federal Bar No. 19105
    Texas Bar No. 00784904
    Marcus L. Stevenson
    Federal Bar No. 22561
    Texas Bar No. 00794694
    1111 Bagby, Suite 2200
    Houston, Texas 77002
    Tel: (713) 650-0022
    Fax: (713) 650-1669

*ATTORNEYS FOR PLAINTIFFS*

14